IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01062-PAB-NRN

STEVEN VANSKY,

      Plaintiff,

v.

STATE FARM AUTOMOBILE INSURANCE COMPANY,

      Defendant.

---

## ORDER

---

This matter is before the Court on State Farm's Motion for Partial Summary Judgment [Docket No. 34]. Defendant seeks summary judgment on plaintiff's common-law and statutory bad faith claims. *Id.* at 9–14. Plaintiff responded, Docket No. 45, and defendant replied. Docket No. 46. The Court has jurisdiction under 28 U.S.C. § 1332.

## I. BACKGROUND[1]

Defendant issued an insurance policy (the "policy") providing $250,000 of uninsured or under-insured motorist ("UIM") coverage to plaintiff. Docket No. 34 at 4, ¶ 1. Plaintiff was involved in a car accident on February 14, 2018 in Denver, Colorado. *Id.*, ¶ 2. Plaintiff, through counsel, submitted to defendant a letter of representation and

---

[1] The following facts are undisputed unless otherwise noted. By including facts in the argument section without identifying whether the facts are disputed or undisputed, plaintiff does not comply with the Court's practice standards in responding to defendant's statement of undisputed material facts. *See* Practice Standards (Civil case), Chief Judge Philip A. Brimmer, § III.F.3. The Court, therefore, will only consider the facts noted in this order as either disputed or undisputed.

a notice of a possible UIM claim on March 21, 2018.  *Id.*, ¶¶ 3–4(a).  On March 27, 2018, plaintiff emailed defendant a list of plaintiff's claimed injuries, and plaintiff indicated that he would update the records and bills as the claim proceeded.  *Id.*, ¶ 4(b).[2]  Plaintiff also requested a copy of the policy, declarations, and any coverage rejection.  *Id.*  On March 30, 2018, defendant acknowledged receipt of plaintiff's letter and sent an authorization for release to plaintiff.  *Id.*, ¶ 4(c).  On August 3, 2018, defendant received the authorization for release from plaintiff.  *Id.* at 5, ¶ 4(f). Defendant sent additional letters to confirm coverage and identify the UIM policy limits on May 4, 2018, May 11, 2018, and May 18, 2018.  *Id.*, ¶ 4(d).

On June 14, 2018, plaintiff submitted photocopies of medical records and bills totaling $1,510.44 and requested the status of defendant's investigation.  *Id.*, ¶ 4(e). On October 22, 2018, plaintiff sent a letter representing that plaintiff had incurred medical bills in the amount of $13,098.57 related to a concussion.  *Id.*, ¶ 4(g).  The October 22, 2018 letter requested that defendant review the documentation.  *Id.*  The letter also explained that the tortfeasor's insurer had not disclosed the tortfeasor's policy limits.  *Id.*  The letter further requested benefits owed and that defendant either provide consent to settle or substitute funds to plaintiff.  *Id.*  On November 19, 2018, defendant confirmed receipt of the October 22, 2018 letter and indicated that defendant could not address the issue of consent to settle without knowing the tortfeasor's policy

---

[2] Defendant states that plaintiff "promised to send updated records and bills."  *Id.* Plaintiff purports to dispute this fact because the email in question does not say "promise."  Docket No. 45 at 4, ¶ 4(b).  Plaintiff is correct, *see* Docket No. 34-2; however, the dispute is not material, as plaintiff's lawyer stated, "I will be sending you updated records and bills as the case proceeds."  *Id.*

limits.  *Id.* at 5–6, ¶ 4(h).  Defendant sent a follow-up letter requesting the status of the

claim on December 20, 2018.  *Id.* at 6, ¶ 4(i).  On December 26, 2018, defendant

provided its consent to settle with the tortfeasor and requested a copy of the tortfeasor's

insurer's offer letter.  *Id.*, ¶ 4(j).

On March 16, 2019, plaintiff followed up on defendant's December 20, 2018

status request and explained that he had not yet received the policy limits from the

tortfeasor's insurer.  *Id.*, ¶ 4(k).  The letter also asked why defendant had not provided

its UIM evaluation.  *Id.*  On March 22, 2019, defendant informed plaintiff that the

adjuster assigned to plaintiff's claim had changed.  *Id.*, ¶ 4(l).  On July 10, 2019,

defendant sent a follow-up letter requesting an update on the status of the claim.  *Id.*,

¶ 4(m).  Plaintiff responded on October 8, 2019 with bills and records related to his

claimed traumatic brain injury and requested benefits owed.  *Id.*, ¶ 4(n).

On November 9, 2019, plaintiff again requested permission to settle with the

tortfeasor for the $25,000 policy limit and attached the tortfeasor's insurer's offer letter.

*Id.* at 7, ¶ 4(o).  On November 12, 2019, plaintiff asked defendant for a current valuation

of his claim and for defendant to identify the records in defendant's possession.  *Id.*,

¶ 4(p).  On November 15, 2019, defendant indicated to plaintiff that it had completed its

review of plaintiff's claim and had determined that plaintiff was adequately

compensated by his settlement with the tortfeasor.  *Id.*, ¶ 4(q).  On November 19, 2019,

plaintiff sent defendant a letter asking defendant to identify the records in its possession

and whether there was anything else defendant needed to complete its evaluation.  *Id.*,

¶ 4(r).  On December 5, 2019, defendant sent plaintiff a letter stating its determination

that plaintiff had been adequately compensated by the settlement with the tortfeasor's insurer and that there were no missing records. *Id.* at 7–8, ¶ 4(s). On December 12, 2019, plaintiff requested the remainder of his medical coverage benefits. *Id.* at 8, ¶ 4(t). On December 27, 2019, plaintiff, for the first time, stated a claim for wage loss. *Id.*, ¶ 4(u). On January 29, 2020, plaintiff provided a medical authorization, his 2017 and 2018 tax returns, and a letter with a lost income calculation. *Id.*, ¶ 4(v).

Plaintiff testified at his deposition that he agreed that his 2017 and 2018 tax returns do not show that he lost income and that there is no wage loss reflected on those tax returns. *Id.* at 13.[3] Plaintiff also testified that he agreed that, if defendant had no other information to assess his wage loss claim, it would be fair to conclude, based on his tax returns, that plaintiff did not lose any wages. *Id.*

As to plaintiff's medical payments coverage ("MedPay") claim, when asked why it took defendant more than a year to issue a MedPay check to plaintiff, from October 2018 until December 2019, defendant's Federal Rule of Civil Procedure 30(b)(6) designee testified that the claims department requested additional information from the Brain and Behavior Clinic, but decided to issue the payment to plaintiff without the

---

[3] Defendant does not set forth testimony from plaintiff's deposition in its statement of undisputed facts, which the Local Rules and this Court's practice standards require in order for such information to be considered on summary judgment. *See* D.C.COLO.LCivR 56.1(a); Practice Standards (Civil case), Chief Judge Philip A. Brimmer, § III.F.3.b.i ("In a section of the brief required by Rule 56.1(a) of the United States District Court for the District of Colorado Local Rules of Practice (Civil) styled 'Statement of Undisputed Material Facts,' the movant shall set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law."). However, plaintiff does not contest this testimony, and the Court, therefore, deems it admitted. *See generally* Docket No. 45.

information.  Docket No. 45 at 6.[4]  The designee also testified that she would not expect defendant's claims department would necessarily issue the payment without the missing information that defendant requested.  *Id.*  Rather, defendant "just made a claim decision to go ahead and do that since it was being requested and that information had not been received."  *Id.*

Plaintiff claims to have suffered a concussion and tinnitus due to the accident.  *Id.* at 8.  Defendant's Rule 30(b)(6) designee testified in her deposition that, although defendant had some of plaintiff's medical records before the litigation, a medical specialist did not review plaintiff's claim.  *Id.*[5]  Defendant's designee's recollection is that no neuropsychologist, neurologist, or expert in tinnitus reviewed plaintiff's claim; although, if defendant had determined such review to be warranted, defendant could have obtained such a review.  *Id.* at 9.

---

[4] Plaintiff does not provide any facts regarding defendant's Rule 30(b)(6) designee's deposition in a fact section in plaintiff's response, which the Local Rules and Practice Standard's require for the Court to consider such information in a summary judgment dispute.  *See* D.C.COLO.LCivR 56.1(a); Practice Standards (Civil case), Chief Judge Philip A. Brimmer, §§ III.F.3.b.iv, v.  Nevertheless, because defendant does not dispute this testimony, the Court deems it admitted.  Moreover, although plaintiff apparently requested $4,187.22 in MedPay benefits, plaintiff provides no facts on when he made his MedPay the claim, what records or bills he provided, or how defendant responded.

[5] In this portion of plaintiff's response, which appears to relate to plaintiff's complaints of a concussion and tinnitus, plaintiff does not specify what medical records the designee testified that defendant had in its possession, or what particular claim – MedPay or UIM – the designee was asked about.  *Id.* (Q:  Prior to litigation, did State Farm have any medical professional review Mr. Van Sky's claim? . . . .  A:  Not in the context, I believe, for how that question is phrased.  We certainly had medical records, but I wouldn't say that we had the claim reviewed by a medical specialist.").

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid

6

summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS[6]

Plaintiff brings three claims for relief: (1) breach of contract, (2) statutory bad faith, and (3) common law-bad faith.  Docket No. 19 at 7–8, ¶¶ 105–122.  Defendant seeks summary judgment on plaintiff's bad faith claims.  Docket No. 34 at 14.

### A.  Statutory Bad Faith

In his complaint, plaintiff alleges that defendant delayed and denied payment of UIM and MedPay benefits without a reasonable basis.  Docket No. 19 at 7, ¶¶ 112–113. Colo. Rev. Stat. § 10-3-1116 entitles a plaintiff to relief if an insurer unreasonably delays or denies covered benefits under Colo. Rev. Stat. § 10-3-1115.

Section 10-3-1115 provides in relevant part:

> A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant . . . .

> [F]or the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

Colo. Rev. Stat. §§ 10-3-1115(1)(a), (b)(II)(B)(2).  Pursuant to § 10-3-1115, an insurer

---

[6] Because jurisdiction is based on diversity, the Court applies Colorado law in resolving the motion.  *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state.").

who delays or denies payment to its insured without a reasonable basis breaches its statutory duty of good faith and fair dealing. *See Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00344-RBJ, 2020 WL 376494, at *3 (D. Colo. Jan. 23, 2020). To prove a claim of unreasonable delay or denial, an insured must demonstrate that: (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *See Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018); *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012) (noting that, because of the lesser liability burden and the onerous penalty provision, a statutory bad faith claim is "arguably . . . more financially threatening to the insurer than a traditional common law bad faith claim").

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro*, 275 P.3d at 759; *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). But, "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.* The burden to establish unreasonableness lies with plaintiff. *See Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (unpublished) (applying Colorado law).

"The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004) (common law bad faith)); *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 994 (Colo. App. 2015). Further, "[a]n insurer's decision to deny benefits to its

insured must be evaluated based on the information before the insurer at the time of that decision." *Schultz*, 429 P.3d at 848 (quoting *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996)); *see also State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.").  An insurer unreasonably delays a claim when it has no "reasonable basis" for denying or delaying an insured's claim.  The Tenth Circuit has held there is "nothing unreasonable about [an insurance company's] denial of [a plaintiff's] claim because it had a reasonable basis for its action." *Wagner v. Am. Fam. Ins. Co.*, 569 F. App'x 574, 580 (10th Cir. 2014) (unpublished); *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016) (quoting *Vaccaro*, 275 P.3d at 759–60) ("[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably.")).  Thus, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence.  *See Bd. of Cnty. Comm'rs v. Auslaender*, 745 P.2d 999, 1001 (Colo. 1987) (interpreting "without a reasonable basis" in a statute regarding the award of attorney fees in litigation against a public entity); *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-cv-03016-KMT, 2020 WL 406077, at *12 (D. Colo. Jan. 23, 2020) (applying *Auslaender* in insurance bad faith context).

Defendant argues that it evaluated plaintiff's claim, determined that he had been

adequately compensated by the tortfeasor's insurer, and reasonably denied coverage. Docket No. 34 at 2. Defendant maintains that plaintiff cannot show that it either denied or delayed plaintiff's claim medical benefits or lost income claims. *Id.* at 10.

### 1. *Plaintiff's Medical Payment Coverage Claim*

The undisputed facts establish that plaintiff submitted a MedPay claim to defendant in October 2018 and that defendant did not pay the claim until December 2019. Docket No. 45 at 6. Colorado law requires that insurers promptly pay, deny, or settle "clean" MedPay claims within 30 or 45 days. *See* Colo. Rev. Stat. § 10-4-642(6)(a) ("Clean claims shall be paid, denied, or settled within thirty calendar days after receipt by the insurer if submitted electronically and within forty-five calendar days after receipt by the insurer if submitted by any other means."). A claim is "clean" if "there is no additional information needed by the insurer to accept or deny the claim." *Id.* § 10-4-642(2)(c)(I). If a claim is not clean and "resolution of [the] claim requires additional information, the insurer shall, within thirty calendar days after receipt of the claim, give to the claimant a full explanation in writing of what additional information is needed to resolve the claim, including any additional medical or other information related to the claim." *Id.* § 10-4-642(6)(b). The person receiving the request for additional information must provide it within 30 days. *Id.* The insurer may deny a claim that requires additional information if the information is not timely provided. *Id.*

The undisputed facts from the excerpt of defendant's Rule 30(b)(6) designee's deposition indicate that defendant's "medical payments coverage unit had asked for additional information[,] such as diagnosis codes," to "consider [the MedPay claim]

complete." Docket No. 45 at 6. The designee testified that she must have "reasonable and complete claim information" and that she would not expect the MedPay coverage unit to "issue [payment] without the diagnosis codes and the information they requested." *Id.* Ultimately, however, defendant paid the MedPay claim without the additional information. *Id.* Because defendant paid the claim based on the same information that plaintiff provided in October 2018, plaintiff argues that the delay was unreasonable. *Id.* at 7 (citing *Vaccaro*, 275 P.3d at 756).

Defendant insists that plaintiff cannot show unreasonableness in its handling of plaintiff's MedPay claim because the undisputed facts show that defendant was "waiting for diagnosis information related to a bill" that plaintiff submitted, which, defendant argues, is a reasonable basis not to immediately pay a MedPay claim. Docket No. 46 at 5. Moreover, defendant argues that it took "reasonable steps" to complete its evaluation of plaintiff's claim. *Id.*

As the Court has noted, the reasonableness of an insurer's conduct is measured objectively based on industry standards, *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004), yet an insurer may challenge "fairly debatable" claims. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985). "[A]n insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis." *Zolman*, 261 P.3d at 497 (citing *Savio*, 706 P.2d at 1275; *Brandon v. Sterling Colo. Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991)). Reasonableness is ordinarily a question for the jury, but it may be decided as a matter of law when there are no genuine issues of material fact. *Id.*

11

The Court finds that summary judgment is inappropriate for plaintiff's MedPay claim because there are genuine issues of material fact regarding whether it was reasonable for defendant to wait to pay plaintiff's MedPay claim.  For instance, there is a genuine factual dispute whether the claim was "clean," given that defendant ultimately paid the claim without receiving any additional information, or, if it was not clean, whether the parties complied with the statutory requirements.  Accordingly, the Court will deny defendant's motion with respect to plaintiff's MedPay claim.

### 2.  Plaintiff's Underinsured Motorist Claim

The Court next considers defendant's denial of plaintiff's UIM claim.  Defendant maintains that plaintiff's "conservative treatment," his decision not to start physical therapy until eight months after the accident, gaps in treatment, and his reports to medical providers that he had no pain complaints and that his cognitive issues were clearing provided a reasonable basis for defendant to deny plaintiff's medical pay benefits claim.  *See generally* Docket No. 34.  However, defendant does not provide record support for any of these purported facts about plaintiff's treatment.  The moving party on summary judgment must demonstrate the "basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted).  The nonmoving party must then designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  From this, the Court determines whether "the evidence presents a sufficient disagreement to require submission to a jury or whether

12

it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  Without any evidence for the purported facts that defendant claims support its denial of plaintiff's medical benefits claim, and for which plaintiff could present conflicting evidence, the Court cannot consider them or determine whether they form a genuine dispute.

There is no dispute that plaintiff claimed $13,098.57 in medical bills from defendant, Docket No. 34 at 5, ¶ 4(g), and settled with the tortfeasor's insurer for the tortfeasor's $25,000 policy limit.  *Id.* at 7, ¶ 4(o).  Defendant argues that, because plaintiff's settlement with the tortfeasor's insurer exceeded his claimed medical expenses, a jury could not find unreasonable defendant's determination that plaintiff had been adequately compensated.

UIM benefits, however, are not limited to medical bills for past treatment, but can include payment for future medical expenses, lost wages, emotional damages.  Plaintiff argues that defendant has not paid for "continuing or future symptoms caused by the collision," for instance, plaintiff's alleged concussion, and that defendant failed to investigate plaintiff's lost wages claim, which claim the Court considers below.  Docket No. 45 at 5.  However, although plaintiff mentions continuing symptoms and future treatment, plaintiff provides no facts, disputed or undisputed, to support this claim.  On summary judgment, the nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324.

The relevant undisputed facts indicate that plaintiff notified defendant of a possible UIM claim on March 21, 2018.  Docket No. 34 at 4, ¶ 4(a).  Defendant

acknowledged the notice on March 30, 2018. *Id.*, ¶ 4(c). Defendant sent plaintiff three letters in May 2018 to confirm coverage and identify the UIM policy limits. *Id.* at 5, ¶ 4(d). Plaintiff provided a records release authorization on August 3, 2018. *Id.*, ¶ 4(f). On October 22, 2018, plaintiff made a claim for $13,098.57, yet plaintiff did not have the tortfeasor's policy limits, which defendant asked for. *Id.* at 5–6, ¶¶ 4(g)–(h). Defendant provided its consent to settle on December 26, 2018 and again asked for the tortfeasor's policy. *Id.* at 6, ¶ 4(j). Plaintiff indicated on March 16, 2019 that he still did not have the tortfeasor's policy limits. *Id.*, ¶ 4(k). Defendant requested the status of the claim on July 10, 2019. *Id.*, ¶ 4(m). Plaintiff ultimately provided the tortfeasor's policy and offer letter on November 9, 2019, *id.* at 7, ¶ 4(o), and, on November 15, 2019, defendant explained that it had completed its evaluation and determined that plaintiff had been adequately compensated by settling with the tortfeasor's insurer. *Id.*, ¶ 4(q). On December 12, 2019, plaintiff sent defendant a letter requesting the remainder of his medical coverage benefits and included another signed medical authorization. *Id.* at 8, ¶ 4(t).

Defendant argues that there was no unreasonable delay in processing plaintiff's claim because defendant completed its review within a week of receiving the tortfeasor's policy and offer letter, which it had asked for soon after plaintiff made his claim. *Id.* at 12. Plaintiff disagrees, yet has identified no specific facts regarding a denial or delay in defendant's processing of plaintiff's UIM claim.

An insurer acts unreasonably when it acts with no "reasonable basis." *Cf. Wagner*, 569 F. App'x at 580. Defendant, however, had a reasonable basis to delay

14

payment; it was waiting for information about the tortfeasor's policy limits to determine whether plaintiff was adequately compensated in his settlement.  Docket No. 45 at 6. Plaintiff has failed to identify a genuine issue of material fact that this was unreasonable and, therefore, plaintiff has failed to meet its burden as the nonmoving party on summary judgment.  Plaintiff identifies no future medical care expenses, for instance, that were not covered by plaintiff's settlement with the tortfeasor and for which defendant should have compensated plaintiff.

Defendant argues that plaintiff's claim was "fairly debatable."[7]  Courts have addressed the issue of whether an insurance company is entitled to summary judgment on a Colorado statutory bad faith claim if its denial of coverage was based on the claim being "fairly debatable."  *See, e.g.*, *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1202 (D. Colo. 2018).  However, a "'fairly debatable' showing, standing alone, is insufficient to support summary judgment for the insurer."  *Glacier Const. Co. v. Travelers Prop. Cas. Co. of Am.*, 569 F. App'x 582, 590 (10th Cir. 2014) (unpublished); *see also Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1260–62 (10th Cir. 2016) (rejecting argument that, "under Colorado law, an insurer cannot act unreasonably in denying a fairly debatable claim").  This is because a "fairly debatable" claim is one where "reasonable minds could disagree as to the

---

[7] Plaintiff argues that the "fairly debatable issue is not relevant to a statutory delay claim."  Docket No. 45 at 11 (quoting *Nibert v. Geico Cas. Co.*, 488 P.3d 142, 147 (Colo. App. 2017)).  However, courts have characterized *Nibert* as an "isolated suggestion" that "appears to be a misstatement of Colorado law."  *See Bonbeck Parker, LLC v. Travelers Indem. Co. of Am.*, No. 14-cv-2059-RM-NRN, 2020 WL 533733, at *11 (D. Colo. Feb. 3, 2020) (citing *O'Sullivan v. Geico Cas. Co.*, No. 15-cv-1838-WJM-MJW, 2017 WL 1243017, at *1-2 (D. Colo. Mar. 24, 2017); *Etherton*, 829 F.3d at 1226-27), *aff'd*, 14 F.4th 1169 (10th Cir. 2021).

coverage-determining facts or law." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). Even plaintiff's claim were fairly debatable, summary judgment does not automatically follow unless there are no "genuine issues of material fact [and] reasonableness may be decided as a matter of law." *Glacier*, 569 F. App'x at 589–90 (quoting *Schuessler v. Wolter*, 310 P.3d 151, 162 (Colo. App. 2012)). Although a claim's "fair debatability" is not sufficient for summary judgment, plaintiff has identified no genuine issues of material fact on defendant's processing of his UIM claim.

Plaintiff argues that defendant had an obligation to promptly investigate his claim, but instead "passively" collected documents. Docket No. 45 at 5–6. Plaintiff is correct that an insurer must "promptly and effectively communicate with anyone it was reasonably aware had . . . information pertaining to the handling of [a plaintiff's] claim." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 891 (10th Cir. 2016) (quoting *Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010)). But, although plaintiff argues that defendant's investigation of his claim was inadequate, plaintiff has not identified what further investigation could or would have uncovered. Plaintiff mentions that he suffered a concussion in the accident and says that he "continues to suffer from tinnitus," Docket No. 45 at 8–9, but he provides no facts or citation to the record regarding his tinnitus. Similarly, although it is undisputed that no medical expert reviewed plaintiff's claim, *see id.*, plaintiff has not identified a factual issue that could preclude summary judgment regarding what an expert may have uncovered. *See Celotex Corp.*, 477 U.S. at 324. Plaintiff therefore has not shown a genuine dispute of material fact that defendant unreasonably delayed or denied his UIM claim.

### 3. Plaintiff's Lost Income Claim

Plaintiff argues that defendant's processing of his lost income claim was also unreasonable.  Docket No. 45 at 7–8.  The undisputed facts indicate that defendant explained on November 15, 2019 that it completed its evaluation of plaintiff's claim and determined that plaintiff was adequately compensated by settling with the tortfeasor's insurer.  Docket No. 34 at 7, ¶ 4(q).  Defendant reiterated this determination on December 5, 2019.  *Id.* at 7–8, ¶ 4(s).  The undisputed facts also indicate that plaintiff first made a claim for lost wages on December 27, 2019 and provided supporting documentation – his 2017 and 2018 tax returns and a letter with a lost income calculation – on January 29, 2020.  *Id.* at 8, ¶¶ 4(u)–(v).  Defendant argues that it is entitled to summary judgment because plaintiff does not dispute that the tax returns that he submitted do not reflect lost wages and, therefore, there is no genuine issue of material fact related to plaintiff's lost wages since he provided no evidence of any loss. *Id.* at 13.  Plaintiff counters that it was bad faith for defendant not to respond to his December 27, 2019 lost income claim and that defendant had a duty to investigate the claim by requesting additional supporting documentation and speaking with plaintiff. Docket No. 45 at 7.

"An insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision."  *Schultz*, 429 P.3d at 848.  Defendant argues that, when it made its coverage decision on November 15, 2019, *see* Docket No. 34 at 7, ¶ 4(q), it had no information before it on plaintiff's lost income claim, which was filed over one month later.  *Id.* at 8, ¶ 4(u).  However, "[d]ue to

the special nature of the insurance contract and the relationship which exists between the insurer and the insured," an insurer owes its insured a duty of good faith and fair dealing. *Goodson*, 89 P.3d at 414 (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). "Broadly speaking, '[t]his duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer.'" *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1112 (D. Colo. 2012) (quoting *Sanderson*, 251 P.3d at 1217). Nevertheless, "where an adversarial proceeding is filed and a genuine disagreement as to the amount of compensable damages exists, the duty to negotiate is suspended, and there is no duty to advance payment of claims." *Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1109 (D. Colo. 2013). Adversarial proceedings began when plaintiff filed this lawsuit on March 11, 2020, *see* Docket No. 34 at 8, ¶ 5, well after plaintiff sought benefits for his alleged lost wages.

As defendant notes, plaintiff identifies no facts about his lost wages claim other than that he submitted a "letter with a lost income calculation" on December 27, 2019 and sent defendant a medical authorization and his 2017 and 2018 tax returns on January 29, 2020. *Id.*, ¶¶ 4(u)–(v). Yet plaintiff provides no facts about the letter, what the letter says, or why it apparently says something other than what is reflected on his tax returns, which, plaintiff testified, he agreed do not show lost income and that, if defendant had no other information, it would be fair to conclude that plaintiff did not lose any wages. *Id.* at 13.

Plaintiff relies on *Peden*, 841 F.3d at 890, and *State Farm Mut. Auto. Ins. Co. v.*

18

*Fisher*, 418 P.3d 501, 502–04 (Colo. 2018), for the proposition that defendant was obligated to request information and interview plaintiff.  Docket No. 45 at 7–8.  Plaintiff, however, provides no facts about the information defendant could have requested that would have reflected lost wages, since plaintiff's tax returns did not.  Plaintiff has also not shown what defendant would have learned from speaking with him that would be different than his deposition testimony, in which plaintiff admitted that his tax returns did not show lost wages.

*Peden* and *Fisher* do not lead to the Court to a different result.  In *Peden*, the plaintiff supported her coverage demand with "documents including medical records, a photograph following surgery, and a college transcript" to show that her "injury had prevented her from graduating college, sapped her of energy, caused her to avoid people, diminished her memory, and hurt her concentration."  841 F.3d at 893.  The court held that a jury could find that State Farm's investigation was unreasonable because the plaintiff provided documentation to show her claimed damages, which State Farm apparently did not consider and therefore did not reasonably investigate the plaintiff's claim before rendering its coverage decision.  *Id.*  Here, however, there is no indication that plaintiff provided any documentation to defendant that defendant did not consider.  Nor does plaintiff provide a single fact, undisputed or disputed, on this issue, which plaintiff must in order to show that there is a genuine issue for trial.

In *Fisher*, the court held that insurers "have a duty to pay undisputed portions of a UIM claim . . . even though other portions of the claim remain disputed."  418 P.3d at 502.  The court explained that "insurers have a duty not to unreasonably delay or deny payment of covered benefits, even though other components of an insured's claim may

19

still be reasonably in dispute." *Id.  Fisher* does not apply here because plaintiff's wage loss claim is not an "undisputed portion" of his UIM claim.  It is instead a disputed portion.

Because plaintiff has failed to raise a genuine dispute of material fact about his lost income claim, supported by specific citations to evidence in the record, *see Celotex*, 477 U.S. at 324, the Court will dismiss the lost income portion of plaintiff's statutory bad faith claim.

### B.  Common-Law Bad Faith

For the insured to prevail on a common-law bad faith claim, the insured must prove that (1) the insurer's conduct was unreasonable and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable. *Savio*, 706 P.2d at 1275; *see also Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997).  As the Court has mentioned, it may be reasonable for an insurer to challenge claims that are "fairly debatable."  *Zolman*, 261 P.3d at 496.  Thus, finding that an insurer's justification for denying or delaying payment of a claim is "fairly debatable" typically weighs against finding that an insurer acted unreasonably, but "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case."  *Sanderson*, 251 P.3d at 1217–18.  Moreover, where "an insurer maintains a mistaken belief that the claim is not compensable, it may be within the scope of permissible challenge even if its belief is incorrect."  *Brennan v. Farmers All. Mut. Ins. Co.*, 961 P.2d 550, 557 (Colo. App. 1998); *Warren v. Liberty Mut. Fire Ins. Co.*, 691 F. Supp. 2d 1255, 1272 (D. Colo. 2010).

20

In determining whether an insurer engaged in common-law bad faith, courts "determine whether [the] claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review." *Savio*, 706 P.2d at 1275 (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wisc. 1978)).  A common-law bad faith claim, therefore, requires "an absence of a reasonable basis for denial of policy benefits and the knowledge or reckless disregard of a reasonable basis for a denial." *Id.* (quoting *Anderson*, 271 N.W.2d at 377).  The "knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Id.* (quoting *Anderson*, 271 N.W.2d at 377).  Therefore, "[i]f an insurer does not know that its denial of or delay in processing a claim filed by its insured is unreasonable, and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable." *Id.*  But this does not mean that a plaintiff must show that an insurer's conduct is "willful and wanton" because, while a finding that an insurer has engaged in willful and wanton conduct would be sufficient to establish common law-bad faith, willful and wanton conduct is a subset of common-law bad faith, which considers a cumulative course of conduct. *See Dale*, 948 P.2d at 551–52.  Ultimately, an insurance company recklessly disregards the unreasonableness of its coverage position when it acts with knowledge that its position lacks a reasonable basis or when it is deliberately indifferent to information concerning the claim.  Colo. Jury Instr., Civil 25:7 (citing *Savio*, 706 P.2d at 1275–76).

In his complaint, plaintiff alleges that defendant engaged in common-law bad faith by "[c]ompelling [plaintiff] to institute litigation to recover amounts due to him" under the policy's UIM coverage, favoring defendant's interests over plaintiff's, delaying or denying plaintiff's claim, "[i]ncompetently evaluating [plaintiff's] claim," "[f]ailing to train its adjusters how to evaluate physical impairment," and "[f]ailing to train its adjusters how to evaluate post-concussion syndrome." Docket No. 19 at 8, ¶ 119. Defendant argues that it is entitled to summary judgment on this claim because plaintiff cannot prove that defendant acted unreasonably for the reasons discussed with respect to plaintiff's statutory bad faith claim. Docket No. 34 at 10. Defendant is largely correct, but the Court has found a genuine factual dispute precluding summary judgment on plaintiff's MedPay claim.

Defendant insists that, "since [p]laintiff cannot prove [defendant] acted without a reasonable basis on the UIM claim, he certainly cannot prove [defendant] knowingly or recklessly disregarded the claim." *Id.* In response, plaintiff argues that defendant had a "policy of willful ignorance concerning concussions" and states that "the tort of bad faith is predicated on the unequal bargaining power between an insurer and its insured." Docket No. 45 at 9. Plaintiff also states that defendant's "willful failure to properly investigate concussions is in violation of" Colorado's Unfair Claims Settlement Practices Act. *Id.* at 9–10. Plaintiff, however, has put forth no facts, disputed or otherwise, to support either of these arguments.

Moreover, because plaintiff has failed to show a genuine dispute of material fact as to whether defendant's conduct was reasonable, except for defendant's handling of plaintiff's MedPay claim, or whether plaintiff's claim was properly investigated, plaintiff

cannot maintain a common-law bad faith claim regarding defendant's handling of plaintiff's UIM or lost wages claims, as a common-law bad faith claim requires "an absence of a reasonable basis for denial of policy benefits and the knowledge or reckless disregard of a reasonable basis for a denial." *See Savio*, 706 P.2d at 1275 (a plaintiff must show both that the insurer's conduct was unreasonable and that the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable; in determining whether an insurer engaged in common-law bad faith, courts "determine whether [the] claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review"); *see also Garcia v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-01504-CMA-MEH, 2021 WL 5770229, at *3 (D. Colo. Dec. 6, 2021) (dismissing common-law bad faith claim where plaintiff failed to identify a genuine dispute of material fact regarding defendant's reasonableness); *Stemple v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-02381-CMA-STV, 2019 WL 2866587, at *5 n.5 (D. Colo. July 3, 2019) ("Plaintiff cannot establish the first element of her bad faith claim, rendering it unnecessary for the Court to analyze the second element of the claim."). The Court, therefore, will grant defendant's motion and will dismiss plaintiff's common-law bad faith claim regarding plaintiff's UIM and lost wages claims.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that State Farm's Motion for Partial Summary Judgment [Docket No. 34] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that the uninsured/under-insured motorist insurance and lost wages portions of plaintiff's second and third claims for relief are **DISMISSED with prejudice**.

DATED March 28, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge